(Decided 10th December, 1891.)

---

EDWIN F. ABELL, and GEORGE W. ABELL, Executors and Trustees, and others, *vs.* WALTER R. ABELL, and others.

*Construction of Will—Termination of Trust—Statute of Uses—Rights of Remainder-men.*

A testator devised and bequeathed to his three sons, and the survivor of them, and the heirs, executors, administrators, and assigns of the survivor, all the testator's residuary estate of every kind, in trust, to value the same within a reasonable time, after his death, three-eighths thereof to devolve upon and vest in them absolutely, as tenants in common, and to hold the remaining five-eighths, the estate having been first valued, set apart, converted, and invested in mortgages, or in State or municipal bonds, and to collect the rents, issues, and profits thereof, and, after paying all necessary expenses of the management thereof, and all charges, taxes, and repairs thereon, then, in trust, to pay semi-annually, the net income accruing from the said five-eighths parts, and of any accretions thereto, in equal parts to each of his five daughters, for the separate use of each of his said daughters for the period of her natural life, and after the death of any one of his said daughters to hold one-fifth part of

Abell *vs.* Abell.

the said five-eighths parts for the child, if only one, of the said daughter so dying, or for the children, if more than one, of the said daughter so dying, share and share alike. Power was given to the trustees to mortgage the whole or any part of the said five-eighths, and it was declared that such mortgage should be a lien, not only on that part of the trust estate so mortgaged, but ·in case of deficiency, upon all the property so set apart in trust for the benefit of his daughters. The trustees were also authorized to lease and to sell any portion of the trust estate. HELD :

1st. That the daughters took equitable life-estates, with remainder to their respective children, and the sons held the whole five-eighths, the trust to continue until the death of the last surviving daughter, when, under the Statute of Uses, the children, the remainder-men, would take absolute estates freed from the trust.

2nd. That though the devise was to the sons and the survivor of them, and the heirs, personal representatives, and assigns of the survivor, yet as the trust created was not required for any practical or useful purpose beyond the lives of the daughters, the equitable life tenants, it was not the intention of the testator to extend the trust beyond the death of his last surviving daughter.

3rd. That the conversion of the trust estate must be made into mortgages, or into real or leasehold estate or into State or municipal bonds of the most assured standing.

4th. That the daughters—the devisees and legatees for life—were entitled to the net income, without any deduction for the payment of costs of administration, debts, and legacies; and were properly chargeable only with the ordinary expenses and repairs; the cost of new buildings and such permanent improvements as might be called betterments to be paid out of the *corpus* of the estate.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, FOWLER, and McSHERRY, J.

*John I. Yellott,* and *Richard M. Venable,* for the appellants.

In this case, the fee is conferred on the trustees, and numerous and large duties and powers are conferred on them. The estates limited to *cestuis que trust* exhaust the equitable estates. There can be no claim that there is in the will any express limitation of the legal estate of the trustees. If it is limited at all, the limitation appears from a restriction or limitation on the duties and powers of the trustees; or, phrasing it differently, the limitation arises from the fact that the objects and purposes of the trust are limited in duration. This leads us to the inquiry: what are the rules for determining the duration of a trustee's estate where the legal fee is, as in the present case, given to the trustee?

The rule is to look to the objects and purposes of the trusts, as shown by the duties and powers conferred on the trustees. Then the inquiry is, looking at·the will and at the position of affairs at the time of the testator's death, is there anything to show that the duties and powers have a definite period fixed to their existence? and he who alleges the existence of such a period must show it.

The duration of the trustees' estate is to be determined by the duration of the trust rather than by the terms employed in limiting that estate; and although a legal estate may be limited to trustees to the fullest extent, yet it shall not be carried further than the complete execution of the trusts required. *Doe vs. Considine,* 6 *Wall.,* 458; *Long vs. Long,* 62 *Md.,* 65-6; *Young vs. Bradley,* 101 *U. S.,* 782; *Lewin on Tr.,* 213, *&c.; Denton vs. Denton,* 17 *Md.,* 403-7; *Hanson vs. Worthington,* 12 *Md.,* 418; *Hill on Tr., sec.* 311.

The trustees' title is commensurate with the purposes of the trust. 2 *Jarman on Wills,* 251; *Fletcher on Trustees,* 27.

The rule is thus stated in *Lewin on Tr.*, 213: "First, whenever a trust is created, a legal estate sufficient for the execution of the trust shall, if possible, be implied. Secondly, the legal estate, limited to the trustee, shall not be carried further than the complete execution of the trust necessarily requires."

The rule relates to the expansion, as well as to the restriction, of the trustee's title. As, however, in the present case the fee is limited to the trustees, the only question involved concerns the restriction of that estate.

But the question being one of intention, the limitation of the estate to the trustee and *his heirs* is a circumstance indicative of an intention to create a fee in the trustee and is to have some weight in determining the trustee's estate.

Thus it has been said that a general devise to trustees and *their heirs* under a will, the purposes of which require them to have some legal estate of freehold, *prima facie* gives the legal fee, and it lies on the parties alleging that they take a less estate to show what less estate will serve the purpose. *Tudor's Lead. Cases*, 356; *Collier vs. Walton*, 17 *L. R. Eq.*, 252, 263; *Cunleff vs. Brancker*, 3 *Ch. Div.*, 409. And in such a case the mere possibility of requiring the fee is sufficient. *Fenwick vs. Potts*, 8 *De G., M. & G.*, 506; *Jenkins vs. Jenkins*, 1 *Willes*, 650; *Tud. Lead. Cases*, 357; *Venables vs. Morris*, 7 *T. R.*, 437; *Poad vs. Watson*, 6 *El. & Bl.*, 605, 623.

The following cases will show that the fee will remain in the trustee where there are slight duties which may possibly involve a dealing with the fee, or where its continuance may be required to accomplish a certain or contingent purpose of the testator, or where its determination might defeat some certain contingent purpose of the testator: *Poad vs. Watson*, 6 *El. & Bl.*, 605, 615, 622–3; *Watson vs. Pierson*, 2 *Exch.*, 580, 592–3; *Doe vs. Davies*, 1 *Q. B.*, 430; *Blagrave vs. Blagrave*, 4 *Exch.*,

549, 568-9; *Doe vs. Ewart,* 7 *Ad. & El.,* 636, 666, 668-9; *Rackham vs. Siddall,* 1 *Mac. & Gor.,* 607; *Venables vs. Morris,* 7 *T. R.,* 437; *Creaton vs. Creaton, Smale & Giffard,* 386; *Hanson vs. Worthington,* 12 *Md.,* 418, 433, 449; *Denton vs. Denton,* 17 *Md.,* 402, 404-5, 407, 408; and see generally, *Tudor's L. C.,* 353.

The objects of the trust are to be determined by the powers and duties of the trustee. They make the trust special. Leaving out of view the special class of cases, (like *Ware vs. Richardson,* 3 *Md.,* 505; *Venables vs. Morris,* 7 *T. R.,* 437,) where the trust is preserved to prevent the defeating of some estate created by the trustee, or the creation of which he contemplates, all the cases undertake to determine the nature and duration of the trustee's title from the nature and duration of his duties and powers. These alone can, in the absence of language definitely fixing the duration of the trust, be looked to to determine its object and extent. If the will definitely fixes the duration of the trust, the powers and duties of the trustee become the "limbs and outward flourishes" of the trust; otherwise, they determine its object and duration.

A duty (trust) must be performed, and if the trustee does not perform it, equity will compel the performance. No inconvenience or loss which may follow from its performance will excuse an omission to perform it. *Lewin on Tr.,* 600, 611-4, 839; *Perry on Tr.,* 5, 249; *Peter vs. Beverly,* 10 *Pet.,* 532, 564.

In determining the duration of the trustee's estate, we are primarily guided by the nature of the trustee's *duties.* He must have an estate of such a character as will enable him to perform these duties. The duties imposed on him make the estate a special trust, and would, in a deed, save the Statute of Uses from executing the use, and in a will, so long as they continue, prevent the determining of the trust. *Ware vs. Richardson,* 3 *Md.,*

505; *Shreve vs. Shreve,* 43 *Md.,* 382; *Handy vs. McKim,* 64 *Md.,* 560; *Warner vs. Sprigg,* 62 *Md.,* 14; *Long, et al. vs. Long, et al.,* 62 *Md.,* 33, 65; 1 *Perry on Trusts, sec.* 305; 1 *Lewin on Trusts,* 210, *&c.; Hawkins vs. Chapman,* 36 *Md.,* 94.

In the case of *powers* the rule is not so well established as in the case of duties (trusts.) It is not in most cases necessary to sustain the title of the trustee in order to enable him to execute a mere power. The legal estate may pass to the *cestui que trust,* and the execution of the power would raise a use in the appointee, to which the Statute of Uses would draw the legal title. There are consequently many cases where conferring a mere power on a trustee does not keep the legal title in the trustee.

The cases of *Denton vs. Denton,* 17 *Md.,* 403, and *Hanson vs. Worthington,* 12 *Md.,* 418, establish as the law in Maryland that where there is an express trust in personalty for the life of a person with a remainder to her children, (12 *Md.,* 433; 17 *Md.,* 404-5), even though there be words of division amongst children, (12 *Md.,* 433), the trust is continued, at least, until the children come of age, (17 *Md.,* 408), or possibly indefinitely (12 *Md.,* 439); and that whether there is (12 *Md.,* 433) or is not (17 *Md.,* 404-5) some power vested in the trustee. When there is a power to reinvest, the law in England is that the trust continues after the determination of the life estate. (*Creaton vs. Creaton,* 3 *Smale & Giffard,* 386, same doctrine as 12 *Md.,* 418.) The rule as to personalty, stated in 17 *Md.,* 407-8, applies also to realty.

An examination of the will shows that the testator's general intent was that the active control and management of his estate should in no way be interrupted by his death, but should immediately pass to his sons, and should continue with them at least until the last survivor died.  ˙ They were to pay or provide for certain legacies, to set apart five-eighths for his daughters and their

children, and then hold it for the benefit of the daughters and their children, the control and management remaining with them so long as one of them survived.

[Counsel undertook to show that the general intention of the testator would appear by reading the will in the order in which the events would occur after his death; and further, by reference to various clauses of the will, to determine when the powers and duties of the trustees were to terminate.—REP.]

*William A. Hammond,* for the appellee, Mary L. Abell.

*Bernard Carter,* for the estate of Walter R. Abell, deceased.

*William A. Fisher,* and *S. Teackle Wallis,* for the other appellees.

It is apparent that while the testator has disposed of the shares of his daughters in favor of their children, if they should have any, he made no provision whatever in case one or more of his daughters should die without having had a child. There can be no doubt that to this extent there is an intestacy. Those who were his heirs at law and next-of-kin at the time of his death take the interest thus undisposed of. *Barnum vs. Barnum,* 42 *Md.,* 309, 311; *Long vs. Long,* 62 *Md.,* 63. The intestacy, it will be observed, is in a portion of the *residue* of the estate. When a portion of a residuary bequest fails to take effect, it will not go to increase the other portions of the residue. It will pass to the heirs and next-of-kin. *Church Extension, &c. vs. Smith &c.,* 56 *Md.,* 398-9; *Long vs. Long,* 62 *Md.,* 311.

Each of the sons and each of the daughters was thus seized of an eighth interest in remainder in the realty, and the next-of-kin entitled to a like interest in the personalty. The result is, that each of the daughters is so interested in these remainders, not only in case of her

Abell *vs.* Abell.

sisters dying without issue, but also in case of her dying without issue herself.

These are interests which are the subjects of disposition by deed or will.

The very fact that the intestacy in question, exists, and that none of the reasons which are alleged for the continuance of the estate in the trustees, after the expiration of the life estates, can possibly apply to it, seems to demonstrate, without more, that such continuance of the trust beyond the lives of the daughters, could not have been contemplated by the testator at all. Unless it was contemplated, as to the whole residue given to the daughters, it could have been contemplated as to none.

What other estates, under the will, were taken by the daughters, by their issue, and by the trustees, respectively, in the five-eighth parts of the residue; in the realty and in the personalty?

The daughters of the testator took equitable estates for their lives. It is of little or no consequence whether each took an equitable estate for her life in an undivided fifth of five-eighths, (one-eighth,) or whether all together took equitable estates, while they all lived, in the whole five-eighths *in solido*. In either event, their estates were confined to their divers lives, and were, in quality, equitable, and not legal.

The Court below has decreed that each took an equitable estate in one-fifth of the five-eighths when segregated from the body of the estate, and it is submitted that such is the proper construction.

There are words of segregation, and the daughters were equitable tenants in common for life. *Barnum, et al. vs. Barnum, et al.*, 42 *Md.*, 309-10; *Sheppard vs. Gibbons*, 2 *Atk.*, 441.

In the twentieth clause the testator speaks of the trusts as for the benefit of his daughters, and *each* of *them,* and in the twenty-first clause he speaks of them in

the plural, as he had done elsewhere, and calls them *"the respective trusts."*

The income is payable "in equal parts" to each of the daughters, and upon the death of a daughter, one-fifth of the *corpus* passes to her children.

It is now entirely settled by the adjudications in this State, as well as elsewhere, that the estate taken by trustees will be determined, not by presence or absence of words of inheritance, but by the objects of the trust, and therefore with reference to the extent of the estate necessary for the support and performance of them. *Long vs. Long,* 62 *Md.,* 65-6; *Young vs. Bradley,* 101 *U. S.,* 782; *Doe vs. Considine,* 6 *Wallace,* 458; *Adams vs. Williams,* (Lord DENMAN,) 6 *Queen's Bench,* 860.

If the duties of the trustee, as prescribed by the deed or will, require for their performance an estate less than the fee simple, then the use in the remainder of the estate will be executed at the moment that the instrument takes effect. If the trust duties, as prescribed by the instrument of their creation, do require the larger estate in the trustee, nevertheless, as soon as they have been performed, or have failed for any reason, so that there are no further active duties required from the trustee, the statute at once executes the use in the *cestui que trust.* *Meacham vs. Steele,* 93 *Ill.,* 145; *Dodson vs. Ball,* 60 *Penn. St.,* 496-7; 1 *Perry on Trusts, sec.* 320 *and note* 1; *Young vs. Bradley,* 101 *U. S.,* 782.

Mrs. Brady, one of the daughters of the testator, having died, there are no trust duties with respect to her share, at least, after the "setting apart" shall have been performed. The other duties are incidents, as we have before suggested, to the duty to pay over the income to life tenants. The argument was advanced at the hearing in the Court below, that the power to sell and lease, is continued after the setting apart of the five-eighths. But surely this power or duty exists only for the life of

the daughters, respectively, and it is impossible that a power, incident to the performance of certain trust duties can outlast them, or that it can extend the duration of a trust or trust estate to which it is incident.

In the case of *Taylor vs. Clark*, 1 *Hare*, 161, the will under consideration contained directions for trustees to convert and invest in public securities.   Vice-Chancellor WIGRAM referred to the fact that no benefit of the residuary estate was given to the legatees *until after conversion*; and speaking of it, he says:   "The Court in such cases  *  *  treats his direction to convert and invest *  *  as a *particular and secondary object—a mode in fact of carrying the primary object into effect, and nothing more.*" p. 168.   *Young vs. Bradley*, 101 *U.* S., 782; *Doe dem. White vs. Simpson*, 5 *East,* (63), (72).

If all the five daughters were dead, the whole trust duties as to the holding for all the daughters would be ended.

By the sixteenth clause of his will the testator directed that upon the death of any one of his daughters the trustees should "hold one-fifth part of the five-eighth parts of the residue and remainder of the estate for the child *  *  or for the children of the daughter so dying." It is needless to cite authority that upon a conveyance or devise to one person in trust to hold for another merely, the estate passes out of the trustee at once to the *cestui que use.*   The language is not, in its effect, different from a devise to A in trust "for the use of B."   *Ware, et al. vs. Richardson*, 3 *Md.*, 541-2, 548, 554.)   Even a devise to one person "in trust to permit another to enjoy the rents and profits" executes the use in the *cestui que trust.*   (3 *Md.*, 548, *misprinted* 458.)

There can be no doubt, we think, that even before the setting apart, each of the daughters and her child or children had equitable estates, the former for life, and the latter in remainder, in one undivided eighth of the

Abell *vs.* Abell.

whole estate. The whole estate is given to the trustees, and the first trust duty is to set apart five-eighths. It is claimed that until the setting apart, the daughters and their issue took no interest. It is quite certain, however, that the trustees did not take the beneficial or equitable estate, except in their own eighths, and that the equitable estate in the other six-eighths was outstanding somewhere. If the contention of the counsel of the plaintiffs were correct, then the testator failed to dispose of the equitable interest between his death and the setting apart, and there would be a resulting trust to each of his children in one-eighth. If such were the case, it would not support the consequences sought to be drawn by the plaintiffs. But there was no such intestacy. The law leans against an intestacy, and the daughters and their issue are entitled to their equitable estates from the death of the testator under the will. It is a general principle, having many forms of application, that an estate or a legacy will be deemed vested according to its legal or equitable quality in the beneficiary at the death of the testator, unless the will clearly directs otherwise, although the enjoyment of it may be postponed, either to some future fixed period, or until some certain act in the future shall be performed. The law favors the vesting of the estate, and the whole of it, at the earliest moment possible. *Jarman on Wills, ch.* 26, *pp.* 734-737, 760-765; *Taylor vs. Clark,* 1 *Hare,* 162-3, 167-9; *Sitwell vs. Bernard,* 6 *Ves.,* 520; *Crisp vs. Crisp, et al.,* 61 *Md.,* 152. The trustees are directed to hold the title during the life of the daughter, and perform certain active trust duties, but *after her death they are required to do nothing except to hold the title for her children.*

If Mrs. Brady's one-eighth was not to vest at her death, had the division been previously made, when was it to vest? It has been suggested that it was to vest when all the daughters shall have died and the youngest

descendant of all of them shall have reached the age of twenty-one years. There is certainly no warrant for such a proposition in any words of the will. The Court is asked not only to extend the estate by a wild implication, but to carry it to the verge of an estate forbidden by the rule against perpetuities.

In the language of Judge ALVEY, *Long, et al. vs. Long, et al.,* 62 *Md.,* 65. "It is not to be supposed that the testator intended that the trust should continue through all generations." The Statute of Uses will execute the use in the children of Mrs. Brady as soon as the setting apart has been done. The will, indeed, presents the simplest case for the operation of the statute. There is a legal estate in fee in the trustee, an equitable life estate in the daughter, and a direction to hold afterwards for the children. This is the equivalent of a direction to hold to the use of the children. *Hill on Trustees,* (235); *Stonebraker vs. Zollickoffer,* 52 *Md.,* 158 and 162; *Ware, et al. vs. Richardson,* 3 *Md.,* 542; *Weiters vs. Timmons,* 25 *So. Carolina,* 488; 3 *Jarman on Wills,* ch. 34, *p.* 71, (5*th Am. Ed.*); 3 *Redf. Wills,* ch. 32, sec. 77; *Robinson vs. Gray,* 9 *East,* (2), (3), (5), (11).

If the legal estate would have been in the children, if the division had been made before Mrs. Brady's death, it would be executed as soon as the division has been made. The powers of mortgage, sale, etc., can have no effect to prevent the vesting.

An examination of other portions of the will, other than the sixteenth clause, sets at rest any doubt, if any could otherwise exist, in respect to the meaning of the testator. It was not his intention to create a trust to be carried on for descendants of his daughters, but only for the daughters themselves.

In the eighteenth, nineteenth and twentieth clauses of the will, in referring to trusts, he speaks of them as being "for the benefit of my daughters," and he thus

defines his intention. And in the same connection he uses language which as clearly indicates that not one trust but five trusts were intended to exist during the lives of his daughters.

Could any part of the income, under the conditions surrounding this estate, be applied to the payment of the pecuniary legacies and of the debts and expenses of administration? We hold the negative, and that the daughters of the testator were entitled to receive five-eighths of the net income of the estate, and that it must be made good to them now, inasmuch as they have not received it. No question can be made certainly, except in regard to the income for the year following the death of the testator, *i. e.*, from the 19th of April, 1888, to the 19th of April, 1889. *Merryman, Ex'r vs. Long*, 49 *Md.*, 548.

Whether the equitable or legal tenant for life of a devise or bequest is entitled to interest from the death of the testator, or from what period, has been the subject of considerable controversy in the Courts, although it is at last settled, in this State at least. *See Evans, et al. vs. Iglehart, et al.*, 190–192; See also the following English cases: *Angerstein vs. Martin*, 1 *Turn. & Russ.*, 232; *Douglas vs. Congreve*, 1 *Keen*, 410; *Taylor vs. Clark*, 1 *Hare*, 171, &c.; *Hewitt vs. Morris*, 1 *Turn. & Russ.*, 241.

FOWLER, J., delivered the opinion of the Court.

The bill in this case was filed by the executors and trustees of the late Arunah S. Abell for the purpose of obtaining a judicial construction of his will, and to secure the aid and direction of a Court of equity in the administration of his large and valuable estate.

Counsel have exhibited much learning and great research both in their exhaustive briefs and elaborate oral arguments. It has become a trite observation that the citation of authorities in cases involving the construction

Abell *vs.* Abell.

of wills gives but little, if any, assistance to the Court. But this rule, which seems to be so well settled is "more honored in the breach than the observance."

A number of interesting and important questions have been presented, supported by numerous authorities; but there are only two of these questions about which there has been any serious contention.

The first is as to the period of time during which the trusts created by the will are to continue, and the second relates to the disposition of the income of the trust estate for the first year, that is to say, whether such income from the real estate can be properly applied to the construction of new buildings and other permanent improvements, and whether any of the income from the trust estate accrued since the death of the testator can be applied to the payment of funeral expenses, debts or legacies.

These questions, arising as they do upon a bill filed for the construction of a will, must depend for their solution upon the intention of the testator, and that intention if not contrary to public policy, the law against perpetuities, or any other settled rule of law or statute regulating the disposition of property by last will and testament, must have full force and effect.

It will not do to say that the intention must govern, and then by some strained or artificial course of reasoning, attempt to place upon the will a construction plainly repugnant to the language used therein by the testator. In other words, we must be governed not by what we may suppose the testator wished, but by what he says. And arguments based upon the supposed or known wishes of a testator in respect to the disposition of his property are not to be considered, unless such wishes are expressed in his will. The short answer, says Chancellor KENT, which Courts are so often compelled to make to such arguments, is, *"voluit, sed non dixit."*

Referring, then, to the will in order to ascertain the testator's wishes and intentions, we find that after making a number of bequests and devises to relatives, employés, and charitable institutions, about which there is no question in this case, we come to the sixteenth clause, by which the testator disposes of all the rest, residue, and remainder of his estate.

It is upon the construction of the latter part of this clause, in connection with other parts of the will, that one of the questions here arises—that relating to the duration of the trusts. By this clause he devises and bequeaths to his three sons, and the survivor of them, and the heirs, executors, administrators and assigns of the survivor, all his residuary estate of every kind, in trust, to value the same within a reasonable time after his death, to set apart five-eighths parts thereof, and to hold in trust said five-eighths so set apart and converted and invested as directed in this clause; and to collect the rents, issues and profits thereof—and after paying all necessary expenses of the management thereof, and all charges, taxes and repairs thereon, then "in trust, to pay semi-annually, and not by way of anticipation, the net income accruing from the said five-eighths parts of the said residue and remainder, and of any accretions thereto, in equal parts to each one of my five daughters, Mary L. Abell, Fannie A. Abell, Annie F. Abell, Helen M. Baughman and Margaret Abell, upon the separate receipts of each of said daughters, to whom the same may be payable for the separate use of each of my said daughters, as an inalienable personal provision, free from the control, debts, or engagements of any husband whom the said daughter may have at the date of my death, or may hereafter have, for the period of her natural life, and after the death of any one of my said daughters, in trust, to hold one-fifth part of the said five-eighths parts of the said residue and remainder of my estate, for the child,

if only one, of the said daughter so dying, or for the children, if more than one, of the said daughter so dying, share and share alike."

From the language here used, together with the clauses following it in the will, the appellees and appellants have drawn very different conclusions. They are concisely stated by the learned Judge of the Circuit Court as follows: "According to one theory the trust here was created for the benefit of the five daughters only, and by the opposite view the trust was intended for the benefit of the five daughters and their respective children. In the former is involved the conception of five separate trusts, terminating separately upon the death of each daughter, while the latter contemplates the aggregate five-eighths held together in mass as the *corpus* of a single trust of indefinite duration."

. The former view was adopted by the Court below.

It would unduly lengthen this opinion if we should discuss the various positions taken by the respective parties, and refer to the numerous authorities cited in support of them. It is sufficient, however, to say that we cannot agree to either of these views—both of which were so earnestly and ably presented.

We will proceed, as briefly as possible, to state the conclusions we have arrived at, and the grounds upon which we base them.

It is apparent that the will before us was drawn by a professional hand, and that the testator intended to distribute his large estate equally among all his children—giving to his sons absolute estates, and to his daughters equitable life estates, with remainder to their respective children. To his three sons, in whose good judgment and business capacity he appears to have had great confidence, he devised and bequeathed his residuary estate in trust; and by the seventeenth clause he declares that three-eighths thereof shall devolve upon and vest in

them absolutely, in equal parts and proportions, as tenants in common, when set apart and valued.

The remaining five-eighths—the estate having been first valued, set apart, converted, and invested as directed in said sixteenth clause, the testator directs shall be held by his trustees, to collect the rents, issues, and profits, and apply the same, among other things "to the payment of all charges and taxes upon, or repairs of, or outlays connected with, *any part* of the property in said five-eighths." There does not seem to be any thing in this clause which would imply that any of the powers or active duties therein mentioned, are to be exercised or performed after the death of all the life tenants. The valuation and setting apart were to be effected within a reasonable time after the testator's death, and he might very reasonably have expected that both would have been completed before the death of any of his children.

The conversion into mortgages and municipal bonds was to be done as rapidly as it could be effected with advantage, and the rents, issues, and profits were to be collected, and the net income paid in equal parts to the testator's daughters during their respective lives.

All the powers given to, and duties imposed upon, the trustees in this clause appear clearly to relate to the five-eighths as a whole.

The whole estate is directed to be valued and set apart, devising three-eighths thereof to his sons absolutely as tenants in common, the other five-eighths, as a whole, to be converted and invested, and it is the income that is to be divided from time to time as it accrues, and paid in equal parts to the daughters during life.

An examination of the other clauses will, we think, show that all the remaining powers and duties of the trustees relate exclusively to the five-eighths as a whole.

By the eighteenth clause, power is given the trustees to mortgage the whole or any part, and it is declared

that such mortgage shall be a lien not only on that part of the trust estate so mortgaged, but in case of deficiency, upon all the property so set apart in trust for the benefit of his daughters. And so the nineteenth clause authorizes the trustees to lease, and the twentieth clause to sell, any portion of the trust estate.

So long, therefore, as the daughters or any one of them shall live, this trust estate must be preserved *in solido*, for otherwise it would not be possible for the trustees to exercise the ample powers given them to charge, sell, or lease the whole or any part of it. For, if upon the death of a daughter, as contended by the appellees, her share should devolve upon her children, the trustees would, of course, have no further control of that part of the trust estate.

But whence comes the supposed power to subdivide the trust estate upon the death of each daughter? It is certainly not given in terms in the will, nor, as we have seen, can it be implied from any of its provisions.

On the contrary, as we have shown, the only division contemplated during the lives of the daughters was to be made for the purpose of giving to the sons three-eighths of the residuary estate absolutely, and the remaining five-eighths to them in trust to pay the income to the daughters—the trust estate to be kept *in solido*, and the net income divided equally among them.

While it seems to us clear that it was the intention of the testator that his trustees were to manage and control the trust estate so long as any one of his daughters should live, we think it is equally clear that upon the death of his last surviving daughter the trust created by the will must terminate, because then the trustees will no longer hold any estate for the daughters, and will, of course, have no active duties to perform. Under such circumstances, it is well settled that the Statute of Uses will execute the use, and the remainder-men would take

Abell *vs.* Abell.

absolute titles freed from the trust. *Hill on Trustees,* 235; 3 *Jarman on Wills, ch.* 34, *sec.* 71; 3 *Redfield on Wills, ch.* 32, *sec.* 77; *Ware, .et al. vs. Richardson,* 3 *Md.,* 542; *Stonebraker vs. Zollickoffer, et al.,* 52 *Md.,* 162.

It was urged, however, by the appellants, that, by a fair construction of the will we should read into the latter part of the sixteenth clause, which, in terms, devised to the trustees a naked trust for the benefit of the grandchildren of the testator, all that he has said when giving powers to be exercised in regard to the trust estate held for his daughters. But why should this be done? We can see neither reason nor necessity for such a course. If the testator intended to extend the trust beyond the time we have indicated, he would have said so in definite terms, especially as the will, in other respects, appears to have been drawn with an evident desire to express with care and perspicuity the wishes of the testator.

If, as is contended, he intended to create the same trust as to his grandchildren which he provided for his children, it is difficult to understand why he did not say so. It was attempted, also, to extend the trust by showing that the active duties to be performed by the trustees continued indefinitely, but in this attempt we think the appellants failed.

If the trust does not terminate at the period indicated by us it would by the terms of the will continue to some time which the appellants did not seem willing or able to designate.

The devise is to his sons and the survivor of them, and the heirs, personal representatives, and assigns of the survivor. But as was said by ALVEY, C. J., in delivering the opinion of this. Court in the case of *Long, et al. vs. Long, et al.,* 62 *Md.,* 65: "Though the devise to the trustees was to them and their heirs, and thus in terms giving them an estate of inheritance in the realty, yet the trust created was not required for any practical or

useful purpose beyond the lives of the equitable life ten-
ants; and it is not to be supposed that the testator
intended that the trust should continue through all
generations.''

It was also urged that in the twenty-first clause there
are no limitations as to the time placed upon the power
therein given the trustees "to manage and direct all
affairs and concerns relating to any property devised and
bequeathed to them in trust.''

But if we are correct in what we have already said,
that it was not the intention of the testator to extend the
trust beyond the death of his last surviving daughter,
the general language used in this clause must necessarily
be limited to the time during which. he intended the
trustees to hold the trust estate.

The testator provided carefully for the case of a daugh-
ter dying leaving a child or children, but he failed to
provide for the contingency of a daughter dying without
issue—and to this extent there is an intestacy.

And the fact of this intestacy, it was urged by the
appellees, demonstrated the necessity of adopting their
view as to the termination of the trust as to one-fifth of
the trust estate upon the death of each daughter, in order
to avoid the most serious difficulties and complications
in the further administration of the trust. But we think
these fears are not well founded. The intestacy extends
only to the equitable title. The legal title being in the
trustees, they will, in the case supposed pay the income
to the heirs and distributees of the testator during the
continuance of the trust—for to them the undisposed of
equitable estate will descend or be distributed as. the
case may be. And it may well be that the testator pre-
ferred to leave something for the law to do, rather than
encumber his will with provisions for cross-remainders,
which would only increase, rather than diminish oppor-
tunities for misconstruction.

Abell *vs.* Abell.

All apprehensions, if any exist, as to the arbitrary exercise of the very large discretionary powers given to the trustees, may now be dismissed. For the trustees themselves, recognizing the great difficulty and delicacy in performing some of the duties imposed upon them, have voluntarily subjected themselves to the jurisdiction of a Court of equity. And whatever their powers may be under the will, if the trusts created thereby are before such a Court, "and a *decree* has been made, the powers of the trustees are thenceforth so far changed that they must have the sanction of the Court for all their acts." 2 *Perry on Trusts, sec.* 474, and authorities there cited.

The valuation, setting apart, or partition of the trust estate, which is yet to be made, as well as all other acts of the trustees in the administration of the trust estate will, therefore, be done under the direction and with the assent of the Court in which they have filed their bill— and the *cestuis que trust* will always have an opportunity to be heard.

We fully agree with the conclusions of the learned Judge of the Circuit Court, for the reasons so clearly stated in his opinion:

1. That the conversion of the trust estate must be made as set forth in clause sixteen, that is to say, into "mortgages" or real or leasehold estate, or in State or municipal bonds of the most assured standing.

2. That the daughters—the devisees and legatees for life—are entitled to the net income, without any deduction for the payment of costs of administration, debts, and legacies;

3. And that they are properly chargeable only with the ordinary expenses and repairs, and that the cost of new buildings and such permanent improvements as may be called betterments, must be paid out of the *corpus* of the estate:

It follows that the decree appealed from must be reversed, in so far as it terminates the trust created by

the will before the death of the last surviving daughter of the testator, and affirmed in all other respects.

> *Decree reversed in part, and affirmed in part, and cause remanded; costs to be paid by the executors out of the corpus of the estate.*

(Decided 10th December, 1891.)

McSHERRY, J., filed the following dissenting opinion:

It is with the profoundest deference that I venture to dissent from one of the conclusions reached by a majority of the Judges before whom this case was argued; and though in cases of this character a dissenting opinion is of little or no practical use, I think I ought to state briefly the grounds upon which my view is founded.

. The proceeding is an amicable one. It was instituted by the acting trustees named in the will of the late Mr. Abell. Its object was, not to strike down or destroy the will, but to obtain the aid of a Court of equity in the administration of the trusts and to procure a judicial construction of some of the provisions contained in the will. The trustees were anxious to be under the protection of a Court of competent jurisdiction in performing their duties, and they were equally desirous that the doubtful portions of the will should be judicially interpreted for their guidance. They accordingly filed the bill which inaugurated this proceeding.

By the sixteenth clause of his will the late Mr. Abell gave the entire residuum of his large estate to his three sons and the survivors and survivor of them, and the heirs, executors and administrators and assigns of the survivor, *upon trust,* to value the whole and then to set apart five-eighths thereof within a reasonable time after his death, and to invest the same in the manner desig-

nated by him, and then *in further trust* to collect the
income and pay therefrom all proper charges and ex-
penses, and the residue, or net income, to pay over semi-
annually in equal parts to each of his five daughters
(whom he mentioned by name) as an inalienable perso-
nal provision *"for the period of her natural life;* and after
the death of any one of my said daughters, *in trust to
hold* one-fifth of the said five-eighths parts of the said
residue and remainder of my estate for the child, if only
one, of the said daughters so dying, or for the children,
if more than one, of the said daughters so dying, share
and share alike.'' The remaining three-eighths of the
residuum he gave absolutely to his three sons.

How long did the testator intend the trusts created
by the sixteenth clause to continue? Were they de-
signed to be indefinite in duration? Do they extend
beyond the lives of the daughters and include the lives
of their children? Or do they terminate as to each
daughter's one-fifth of the five-eighths upon her death?
There is no word or syllable in the whole will which
can justify the inference that the testator intended the
trusts to last forever. Nor is there any thing in the
instrument, it seems to me—and with great submission
I say it—which carries the trusts, as to any daughter's
one-eighth, a single hour beyond the expiration of her
equitable life estate.

Whilst it is true that large discretionary powers are
given to the trustees by the eighteenth, nineteenth,
twentieth and twenty-first clauses of the will, with
respect to the investment of the trust property, and in
reference to the selling, mortgaging, leasing and encum-
bering thereof, those powers are subordinate to, and
merely incidents of, the main and principal duties to
preserve the estate and to collect the income and pay it
over, in equal parts, to the daughters, for whose pro-
tection the testator was chiefly solicitous. These powers

were intended to further and promote the trusts, and not to engraft additional trusts upon those created by the sixteenth clause. It is against every settled rule of construction to treat these subsidiary powers as having the effect of stretching the trust beyond the limits marked by the active duties assigned to the trustees; and consequently, such powers, of necessity, become extinct when the duties upon which they are dependent are at an end. "Courts will abridge the estate when words of inheritance are used, if the execution of the trust does not require a fee; and so they will enlarge the estate if no words of inheritance are used." *Perry on Trusts, sec.* 320. The duty to value the whole and set apart five-eighths in trust for the daughters is the first duty imposed upon the trustees. When those five-eighths shall have been set apart that trust will be performed. The duty to preserve the *corpus* and to collect and then pay over the income to the daughters is a distinct trust, and every power possessed by the trustees is subordinate to these primary objects. These subsidiary powers cannot enlarge the active duties of the trustees without making the incidental powers, and not the prescribed duties, the measure of the trusts' duration. The trustees are to pay over the income in equal parts to each one of the five daughters "for the period of her natural life." But after the death of a daughter to whom, *by the terms of the will,* are the trustees to pay the income previously payable to the deceased daughter in her lifetime? To her children? *The will does not say so.* If she dies without having had children, then to whom is it payable? The will is absolutely silent on that subject. The duty of collecting and paying over the income by the trustees, is confined in express terms by the sixteenth clause, not to the period covered by the joint lives of all the daughters, and the life of the last survivor, but distinctively, as to each "equal part" of the net

income, to the period of the natural life of the particular daughter to whom that equal part is payable. Not another clause in the will relates to this active duty imposed upon the trustees, and in so far as the language used by the testator makes manifest his intention, the explicit declarations in several clauses following the sixteenth are quite sufficient to indicate that he designed the trusts as to each daughter's one-fifth of the five-eighths to last no longer than the duration of the equitable life estate which he created for her. Thus in the eighteenth and nineteenth clauses he speaks of the trusts as created for the benefit of his *daughters,* and in the twentieth, for his *daughters and each of them,* and in the twenty-first clause, as *"respective* trusts;" without a suggestion that the trusts were established for, or were believed by the testator to include, the daughter's children, or any one else but the daughters themselves. The absence of a provision in the sixteenth clause or elsewhere carrying the active duties of the trustees as to each daughter's one-fifth of the five-eighths beyond the period of her natural life, and the subsequent explanatory declarations, just alluded to, carefully and repeatedly defining the duration of the trusts by describing them as having been created for each of his *daughters,* make it morally certain that he intended to exclude from the scope of those trusts all other persons than those expressly named.

But this is not all: "Where an estate is given to trustees and their heirs in trust to pay the income to A during her life, and at her decease to hold the same for the use of her children, or her heirs, or for the use of other persons named, the trust ceases upon the death of A, for the reason that it remains no longer an active trust; the Statute of Uses immediately executes the use in those who are limited to take it after the death of A; and the trustees cease to have anything in the estate, not because

the Court has abridged their estate to the extent of the trust, but because having the fee or legal estate, the Statute of Uses has executed it in the *cestui que trust.*" *Perry on Trusts, sec.* 320; *Ware vs. Richardson*, 3 *Md.*, 542. The Statute of Uses is applicable to wills. 3 *Jarman on Wills*, 50; *Ware vs. Richardson, supra.* Now, upon the death of each daughter the sixteenth clause of the will gives that daughter's one-fifth of the five-eighths to the trustees *"in trust to hold* * * for the child, if only one, of said daughter so dying, or for the children, if more than one, of said daughter so dying, share and share alike."* No duty is imposed upon the trustees to be discharged towards or in behalf of the child or children of a deceased daughter. There is no direction to pay over the income to such child, or to invest it; nor is there any authority given the trustees to collect the income after the death of the daughter. The property is given to the trustees *"in trust to hold"* for the child or children and nothing more. This is a mere naked trust without active duties of any kind. Under such circumstances the *Statute of Uses,* 27 *Henry* 8, *ch.* 10, transfers the use into possession by converting the estate or interest of the *cestui que trust* into a legal estate and by destroying the intermediate estate of the trustee. In other words, the statute immediately executes the use in the child or children and upon the death of the mother, the estate of the trustee is at an end. When the purposes for which it was created are satisfied, "the estate of the trustee ceases to exist, and his title becomes extinct." *Doe vs. Considine,* 6 *Wall.,* 458; *Young vs. Bradley,* 101 *U. S.,* 782; *Long, et al. vs. Long, et al.,* 62 *Md.,* 64; *Doe dem. White vs. Simpson,* 5 *East,* 163. As a consequence of these principles a deceased daughter's one-eighth is freed and disengaged from any trust whatever. And if this be so, then the trust as to each daughter's one-eighth must terminate when she dies and can-

not, under established legal principles, be extended beyond that period. Whilst this conclusion would result, each time a daughter died, in separating her one-eighth from the rest of the trust property, and might, therefore, occasion much inconvenience and expense, still, if that is what the testator meant, these considerations ought not to defeat his intention.

There is still another view of the subject. There is no provision made by the will for the event of a daughter dying without having had issue. Should such an event happen there would be an absolute intestacy as to that one-eighth of the residuum of the estate; and the property would devolve upon the heirs-at-law or next-of-kin of the deceased daughter. But would it devolve upon them subject to any trust? If so, what trust, *and by virtue of which provision of the will?* If the trusts continue as to *all* the daughters' eighths until the death of the last survivor, then, without there being a single word in the will limiting over to any one, either in trust or otherwise, the eighth of a daughter dying without having had issue, that eighth would be kept in trust and withheld from the possession of those who would be entitled to it, and who, including the sons of the testator, would thereupon be treated as *cestuis que trust*, though no one of them was named, indicated, described or ever hinted at as occupying, or being ever intended to occupy that relation *to that one-eighth*. There is not a line in the will directing such an eighth to be held in trust longer than the life of the daughter for whom it was given. If this be so—and it seems to me that it is—then the testator has not fixed as to the daughters who may die without having had issue, any other period for the termination of the trusts as to their eighths, than their respective deaths. But he has joined *all* the daughters together in the very same sentence when he created the trusts, and has fixed no different limit for the expiration of the trusts

as to those who may and those who may not have issue. Unless, then, he intended the trusts to continue under a condition which he has not named, to wit: the case of a daughter dying without having had issue, he manifestly did not intend them to continue in any event or as to any daughter's interest beyond the duration of her equitable life estate. Either the share or interest of a daughter dying without having had issue must be kept in trust for a period which the testator has not fixed himself—and no one else has authority to fix it—or the share or interest of *every* daughter must be discharged from the trusts immediately upon her death. This seems to me to be inevitable.

Had the testator desired to carry the trusts beyond the life of each daughter as to her eighth, he could easily have said so—but he did not say so; and that he did not is apparent upon an inspection of his will, and is made overwhelmingly certain by the fact that the learned counsel for the trustees while suggesting in their arguments various periods for the termination of the trusts, were unable to select and agree upon any of them as the correct or even probable one. No one knew better than the distinguished lawyer who drew the will how to say in plain terms that the trusts should continue until the death of the last surviving daughter, if that had been intended. But technical words were employed which for centuries have been held to execute the use in the *cestui que trust* when no active duties are imposed, and thereby, to terminate the estate of the trustee upon the expiration or cessation of the active trusts; and the conclusion seems to me irresistible that such words were purposely and properly used to limit and define the duration of the trusts in respect to each daughter's one-fifth of the five-eighths to the life of each daughter, respectively.

I agree fully to the disposition made of the other questions involved in the case.

(Filed 12th January, 1892.)