JAMES H GORDON, Executor, et al. *vs.* ELIZABETH
SMITH et al.

*Construction of a Will.*

A will gave to the testator's son Robert "if living one thousand dollars,
or if dead to go to his wife or widow Elizabeth." The next paragraph
of the will was: "Eight hundred dollars to Elizabeth Smith, one hun-
dred dollars to her son Foster, one hundred dollars to her daughter
Maud." *Held*, that the bequest in the second paragraph is independ-
ent of the bequest to the testator's son in the first paragraph, and not a
mere direction for the mode of payment of that legacy in the contin-
gency of Robert's death, and that Elizabeth is entitled to eight hundred
dollars and her children to two hundred dollars in addition to the leg-
acy to Robert.

Appeal from Circuit Court No. 2, of Baltimore City (DEN-
NIS, J.)

The cause was argued before McSHERRY, C. J., BRISCOE,
PAGE, BOYD, SCHMUCKER, JONES and BURKE, JJ.

*Charles E. Hill* and *John Philip Hill*, for the appellant.

*S. S. Field*, for the appellee.

McSHERRY, C. J., delivered the opinion of the Court.

The will of Thomas A. Smith, late of Baltimore City, con-
tains, amongst others, the following provisions:

"To my son Robert A. Smith if living one thousand dol-
lars ($1,000), or if dead to go to his wife or widow Elizabeth
Smith.

"Eight hundred dollars to Elizabeth Smith, one hundred dol-
lars to her son Foster G. Smith, one hundred dollars to her
daughter Maud."

The question before us is, did the testator intend by these
provisions to dispose of *two* thousand dollars or only the sum
of *one* thousand dollars which, in the event of the death of his
son Robert, was to be divided between Elizabeth and her two

children in the proportion of eight hundred to the former and one hundred to each of the latter? Treating the above provisions as one clause divided into two paragraphs, as it is in the original will, is the second paragraph to be regarded as a mere direction for the payment on the contingency of Robert's death of the one thousand dollars mentioned in the first paragraph; or does the second paragraph contain a distinct and unconditional gift of an additional one thousand dollars? The answer to the inquiries must be found in the will itself taken as a whole when viewed in the light of the circumstances which surrounded and were known by the testator at the time he executed it. The undisputed facts show that the testator had at the time he made his will and at the time of his death, which occurred a little more than three years afterwards, one daughter and three sons who were all adults. He made no attempt to divide his estate equally between his children. To one son he gave five hundred dollars; to his daughter he gave six thousand dollars and made her residuary legatee; then came the clause herein above quoted, and to his son Elmer he gave four thousand dollars to be invested, and with a limitation over to the children of his daughter if Elmer should die without children. The son Robert abandoned his wife Elizabeth more than nineteen years ago and it was not known whether he was dead or alive. The two children of his son Robert were infants when they and their mother were deserted, and she reared them and supported them herself, receiving occasional aid from the testator during their minority. With these circumstances the testator was familiar, and he doubtless knew that these two grandchildren and their mother were the most dependent and the poorest members of his family, for such is the undisputed fact. It is conceded that the assets of the estate are fully sufficient to pay all the legacies including the one thousand dollars claimed by Elizabeth Smith and her two children in addition to the sum given to the son Robert.

With these facts in view can it be said that it was the intention of the testator to give· by the clause we have quoted, to his wayward son Robert, if living, the sum of one thousand

dollars to the entire exclusion of that son's neglected family? The natural meaning of the language he has used does not indicate such an intention; and if every word in the clause is to be given effect, and none of them is to be rejected and words not there now are not to be added, such an intention cannot be implied.    The clause is distinctly divided into two paragraphs, each one of which is complete in itself.  One gives to Elizabeth Smith a thousand dollars in the contingency that the testator's son Robert is dead.    The other gives her eight hundred dollars absolutely and without any condition whatever.    Not only is one a contingent and the other an absolute legacy, but the amounts of the two are different.    To make the sums named in the second paragraph identical with, and a distribution of, the sum stated in the first, there must be some words eliminated from, or other words added to, the first paragraph, whereby the absolute gift in the second paragraph will be converted into, or cut down to, a contingent legacy. To sustain the contention that the second paragraph does not give an absolute legacy, one or the other of two inadmissible alternatives must be adopted, viz., either, first, the words "to his wife or widow Elizabeth Smith" must be expunged; or, secondly, the words "and children, in the following proportions," or words of the like import, must be added.    In the first instance the clause would read "To my son Robert A. Smith, if living one thousand dollars. or if dead to go ———— eight hundred dollars to Elizabeth Smith, one hundred dollars to her son Foster G. Smith, one hundred dollars to her daughter Maud."    In the second instance the clause would read, "To my son Robert A. Smith, if living one thousand dollars, or if dead to go to his wife or widow Elizabeth Smith *and her children in the following proportions:* Eight hundred dollars to Elizabeth Smith, one hundred dollars to her son Foster G. Smith, one hundred dollars to her daughter Maud." We have no authority to drop the words omitted from the first of the alternative readings, because by dropping them we would fail to give effect to plain and unambiguous words which the testator saw fit to employ; and we are not warranted in

interpolating the words inserted in the second alternative read-
ing, because they are our words and not the testator's.   When
the language which a testator has used is plain and free from
doubt there can be no justification for the introduction of words
which he has not employed, merely to make the clause fit a
preconceived notion that the testator meant something totally
different from what he said.

But it has been contended that the second paragraph is sub-
ordinate to and not independent of the first, because wherever
a legacy was given by the will the testator preceded it by the
phrase "To my son," "To my daughter," and the second
paragraph does not begin with that phrase at all.   The will,
however, does not support the assumption upon which this
contention is based.   For example: "All my bedroom furni-
ture to my daughter Laura;" "My silver watch to James H.
Gordon;" "If there is any money left after all debts are paid
pay it to Laura V. Gordon."   Here are three bequests each
one of which begins with a designation of the thing given and
not by the naming of the beneficiary; and it is the thing given
—the eight hundred dollars—with which the second para-
graph of the clause in question begins.

· We can derive no aid from the punctuation of the will.   The
original instrument was brought before us under an order
passed pursuant to *Section 52, Article 5 of the Code*, and it is
impossible to distinguish the draftman's periods from his
commas.   We have therefore disregarded the punctuations en-
tirely

Though we have examined the cases cited in the admirable
briefs filed by the counsel for the appellants and the appellees
we do not deem it necessary to review them, because, as has
often been said by this and other Courts, judgments interpreting
even seemingly similar wills of other testators are rarely of any
value in ascertaining the intention of a different person, except
in so far as such judgments establish or reassert general rules
of construction applicable alike to all testamentary dispositions.
Some of these general rules are axiomatic, and such of them
as control this case are, first, that which gives effect to the in-

tention of the testator if it violates no principle of law or rule of property; secondly, that all the words of a will must·be given effect, if by the rules of law this can be done; thirdly, that words which are not there cannot be added, merely to make the terms conform to an assumed intention; and fourthly, that the grammatical and ordinary sense of the words must be adhered to, unless such a course would lead to an absurdity or some repugnancy or inconsistency with the rest of the instrument.

Pursuant to and in conformity with these rules Circuit Court No. 2 reached the conclusion that Elizabeth Smith was entitled to eight hundred dollars, and that each of her two children was entitled to one hundred dollars under the second paragraph of the clause we have quoted, in addition to the one thousand dollars given by the first paragraph of that clause to Robert A. Smith.    We think that conclusion was right and we therefore affirm the decree against which this appeal was taken.

*Decree affirmed with costs above and below.*

(Decided March 27th, 1906 )