# ADELE HILGARTNER, ET AL.,

*vs.*

# CHARLES L. HILGARTNER,

INDIVIDUALLY AND AS ONE OF THE TRUSTEES OF ANDREW
HILGARTNER, DECEASED.

*Wills : construction; power to purchase part of estate; time for
exercise; reasonable time.*

In construing wills, the general intent of the testator must
prevail over a particular intent.                    p. 273

A testator's estate consisted mainly of the capital stock of the
corporation, under the name of which he and a brother had
been carrying on a profitable business; the will, after making
careful provisions for the division of his estate between his
wife and children, and the survivors, etc., and, to his executors
the power to sell, reinvest, etc., gave to a brother an option to
purchase the testator's stock in said corporation at its book-
value, according to the last annual statement: *Held,* in view of
all the facts of the case, the option was intended to be one to
be exercised in a reasonable time, and that a reasonable time
would be within a year from the grant of letters on the decced-
ent's estate.                    p. 275

*Decided December 16th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City.
(HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*George Whitelock* (with a brief by *Whitelock, Deming & Kemp*), for the appellants.

*Roland R. Marchant* (with whom were *Addison E. Mullikin* and *Henry H. Dinneen,* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

This case involves the construction of certain provisions of the will of the late Andrew Hilgartner. By its first clause he gave to his wife "all my household goods, furniture, silver ware, plate, books and pictures which I may have in my dwelling at the time of my death; also all my private horses, carriages and harness, together with the sum of one thousand dollars ($1,000) in cash."

The second clause of the will then reads as follows:

"I give, devise and bequeath all the rest and residue of my estate, real, personal and mixed unto my wife, Adele Hilgartner, and my brother, Charles L. Hilgartner, to be held by them, in trust, to collect and receive the rents, issues and profits therefrom and after the payment of taxes and other necessary charges and expenses incident to the preservation thereof, to pay the net income from my estate to my wife, Adele Hilgartner, for and during the term of her natural life if she shall so long continue my widow; and upon the death or remarriage of my said wife, then shall my trustees or the survivor or successor of them divide the said rest and residue of my estate as the same may be then constituted, among my children then living, share and share alike, *per stirpes* and not *per capita,* the child or children of any deceased child standing *in loco parentis;* the interest of any child or descendant thereof, who, at the time thus fixed for the division of my estate by my trustees shall not have reached the age of twenty-one years, to continue in the trust created for their use and benefit, until said age has been reached, then to vest free and clear of this trust. The trust in all events to cease and end when my youngest living child shall be twenty-one years of age, at or after the death or remarriage of my wife."

The third clause makes provision, in case Mrs. Hilgartner shall renounce the will, with regard to the disposition of the property, which had been bequeathed by the second item of the will.

The fourth clause made provision for the devolution of his property in the event of the death of one or more of his children, and by the fifth clause he provides as follows:

> "Item 5. It is my desire and wish and I so will that my brother, Charles L. Hilgartner, be permitted to purchase from my estate the shares and capital stock of the Hilgartner Marble Company, a body corporate, owned by me at the time of my death, and if he should desire to purchase the same I authorize, empower and direct my executors, pending the settlement of my personal estate, and thereafter my trustees to make such sale at and for the book value of the said shares of stock as the same (book value) appears from the last annual statement of the condition and affairs of the said Hilgartner Marble Company made next preceding my death. *It is not my intention that the powers elsewhere granted herein to my executors and trustees to sell or change securities or investments of my estate shall apply to the shares of stock of the Hilgartner Marble Co., and should my said brother not elect to buy the said stock after my death,* I direct my said trustees to hold the same as a part of the corpus of my estate. By the term 'book value,' as herein used, is meant the value of the said stock as the same is represented by the items of valuation in the statement of the company which is customary to have made annually by an auditor.'

Mr. Hilgartner died on the 21st of March, 1914, and his will was admitted to probate the April following. The date of the granting of the letters does not affirmatively appear in the record, but presumably it was on or about the same date as the admission of the will to probate.

On the 12th of February, 1915, his executors passed their first administration account, by which twelve hundred and fifty shares of the capital stock of the Hilgartner Marble Co. were distributed to his trustees under the terms of Item 2 of the will. On the same day, February 12th, 1915, jurisdiction of the administration of the trust was assumed by the Circuit Court No. 2 of Baltimore City, and the question now presented is, whether, under the language of Item 5 of the will, the right of Charles L. Hilgartner to purchase the stock of his brother Andrew in the Hilgartner Marble Co. had already expired by lapse of time, or whether that right still exists and will continue to exist throughout the life or widowhood of the testator's wife, Adele Hilgartner.

The language of Item 5 does not specify the precise point of time at or within which the option or right of Charles L. Hilgartner to purchase the stock of his brother must be exercised, and the contention on behalf of Mrs. Hilgartner is that such being the case, it is a right to be exercised within a reasonable time, if effect is to be given to the general intent of the testator. On behalf of Charles L. Hilgartner the contention is that the general intent and chief concern of the testator was to give to his brother the right to purchase this stock, and that, therefore, it is a right which must continue as long as Mrs. Hilgartner lives.

There can be no question in this State but that the general intent of the testator will always prevail over a particular intent: *Abell* v. *Abell,* 75 Md. 57; *Robinson* v. *Bonaparte,* 102 Md. 71; *Gordon* v. *Smith,* 103 Md. 315; *Higgins* v. *Safe Deposit & Trust Co. of Baltimore, ante, page* 171, and authorities therein cited.

What was the general intent of Mr. Hilgàrtner as expressed in his will? Was it to provide for his family, or was it that his brother should have the right to purchase his stock in the Hilgartner Marble Company? Manifestly, it was the former; his wife and children were the sole persons primarily named in the will, to share in the distribution of

his property. Even in the event of the remarriage of Mrs. Hilgartner, by the first item of the will a specific provision had been made for her, which it was expressly declared should not be affected by remarriage. It is probably true, as argued on behalf of the appellee, that Mr. Hilgartner desired that his brother should not be fettered in the business which they had carried on together, under the corporate form of the Hilgartner Marble Co., by a sale of Andrew's interest to persons who might be inimical to him, and for this reason it was his desire that his brother should have the opportunity to acquire his interest, if he so desired. But it can never be said that a right so given constitutes a general intent, when the party thus given the opportunity does not share to the extent even of a dollar in the distribution of the testator's estate. There was no disposition upon the part of Andrew Hilgartner that his interest in the corporation should be disposed of to an inimical interest. This appears from the provision which is made for the holding of the stock in that corporation by his trustees, and in his eliminating it from that part of the corpus of the estate of which the trustees were authorized to change the investment.

The conclusion is, therefore, inevitable that the language of the testator must be held to require the exercise of the option within a reasonable time, no time having been mentioned.

There are other expressions in the will which tend in the same direction; such as the mode of the determination of the value of the stock, upon the basis of which the option is given. Also the language in Item 5, "should my said brother not elect to buy said stock *after my death,* I direct," etc. This seems to contemplate an exercise of the option shortly after the death of the testator. Pointing strongly in the same direction also is the authority given to the executors to sell. The executors could not have been required to pass an account in the estate of their testator within twelve months from the date of the grant of letters; Code, Article 93, Section 1.

If the option was one not to be exercised for a considerable time, why or what occasion could there have been to confer such a power upon the executors?

What then is to be considered a reasonable time within which the option or election to purchase should be exercised? The language of the will confers the right to make the purchase either from the executors or trustees. Andrew Hilgartner must be presumed to have made his will with knowledge of the law governing questions of administration. The executors might, if they had seen fit, have passed their account and so closed the estate upon the expiration of six months from the time of the grant of letters, and notice to creditors. If they had done so they would, thereafter, have held the property in the capacity of trustees and not as executors; but they were not compelled to so render an account under twelve months from the grant of letters; there was thus a period of six months during which they might hold in one capacity or the other, and their holding at such time, whether as executors or trustees, the testator could not foresee. If it had been his purpose to restrict the exercise of the option to six months from the date of his death there could of course have been no occasion to include the trustees when conferring the power, and so if his purpose had been that it was not to be exercised until after the twelve months, there was no necessity of conferring it upon the executors. It therefore follows, since the power of sale was conferred equally upon his executors and trustees, that a reasonable time for the exercise of such option, was any time within the space of twelve months after the grant of letters testamentary upon his estate.

The valuation that the purchaser was to pay, was to be determined by the book value of the stock as it appeared from the last annual statement of the condition and affairs of the company prior to his death. That ascertainment of value could conceivably have been made at a time twelve months before the next statement would in the ordinary course of business, be made up. It is true the interval between the

last preceding annual statement and his death might have been a much shorter time, but it could not have been a longer period, and this fact again suggests that it was his purpose to give a right of purchase at any time within a year from the time of his death.

In point of fact the first account of the executors was passed in February, 1915, or ten months after the death of Andrew Hilgartner and the grant of letters upon his estate; by the account so passed the option not having been exercised, the stock necessarily passed from the executors to the trustees, and for two months after it had so passed to the trustees the right of Charles L. Hilgartner to exercise the option given him must be recognized, but with the expiration of the twelve months the reasonable time must be held to have passed and the stock now in question to be now part of the corpus of the trust estate, in accordance with the terms of his will.

There was some discussion in the argument as to a clash of interests between Charles L. Hilgartner, individually, and Charles L. Hilgartner, as trustee. This is not a matter which the Court is required to discuss at this time. Suffice it to say, that it is entirely clear, not that such a clash has arisen, but that one might easily arise. And this fact could only operate to still further emphasize the correctness of the conclusion already reached.

The appellee in his brief, for the purpose of controverting the conclusion indicated above, propounds several questions, but a discussion of and an answer to these would now be purely academic, in view of the conclusion reached.

*Decree reversed and cause remanded, the costs to be paid by Charles L. Hilgartner.*