RICHARD R. PUE,
PROCHIEN AMI OF MATILDA R. H. PUE
AND HENRY H. PUE, MINORS            } MARCH TERM, 1849.
vs.
HENRY H. PUE ET AL.

[CONSTRUCTION OF WILLS.]

IT is the duty of the courts to give effect to every part of a will, without change or rejection, provided, an effect can be given to it, not inconsistent with the general intent of the whole will taken together.

When there are two conflicting clauses, the principle is, that you are not to disturb the prior devise further than is absolutely necessary for the purpose of giving effect to posterior qualifying disposition.

When a testator uses, in one part of his will, words having a clear meaning in law, and in another part, words inconsistent with the former, the first words are to be cancelled and overthrown, only, when the two provisions are totally inconsistent with each other, and where the real intention of the testator cannot be ascertained.

It is now fully established, that the general intent of the testator, though first expressed, will overrule the particular intent.

[This case originated on the petition of Richard R. Pue, the next friend of Matilda R. H. Pue, and Henry H. Pue, infants; stating that Philip Hammond, deceased, by his last will and testament, devised to his ·daughter Harriet, a tract of land in Anne Arundel county in fee simple, upon which she entered

after his death; that she subsequently intermarried with Henry H. Pue, by whom she had two children, the said Matilda and Henry, and died in the year 1814—leaving her husband and said children surviving her; that her husband is now in possession of the land as tenant by the courtesy; that it would be beneficial to all parties, but particularly the infants, that the estate be sold, and the proceeds of sale properly distributed amongst them; and praying for such sale. Before a sale (to which Henry H. Pue by his answer agreed) was made, a petition was filed in the cause by Rezin Hammond and others, objecting to the proceedings, on the ground that they had not been made parties thereto, although interested as trustees for the said infants; and denying that the said lands were devised to the said Harriet Hammond in fee simple, or that her husband had any interest therein. The ·petitioners also prayed to be made parties, which was accordingly done. A commission was afterwards issued, and certain testimony taken, relative to the propriety of a sale, the effect of which is stated by the Chancellor in his opinion; and evidence was also given of a lease, to which the land was subject, but which the lessees had agreed to surrender on certain conditions, for the purpose of facilitating a sale. The two clauses of Philip Hammond's will, under which the parties respectively claim, are set forth in the Chancellor's opinion.]

THE CHANCELLOR:

Upon a more careful examination of the will of Philip Hammond, deceased, my mind has· been brought to the conclusion, that his daughter Harriett, who afterwards intermarried with Henry H. Pue, the elder, took an estate in fee, in the lands mentioned in the proceedings in this cause; and that, consequently, her children upon her death, took by descent from her, and not as purchasers under the will of their grandfather, the testator.

The language of the devise to Harriett is confessedly full and ample to pass the fee. It is to her, "her heirs and assigns forever," and she must, therefore, take the entire estate, unless in some other part of the will there are provisions, which, either

expressly, or by plain implication, reduce the estate thus clearly devised, to a lesser interest.

The will is a very long one. It disposes of a large estate among the children and other objects of the testator's bounty. To his sons, of whom he had several, he devises portions of his real estate for life, in express terms, with remainder in fee to their children; but to his daughters, Matilda Hammond and Harriet Hammond, he gives the absolute and entire interest, in the most unequivocal language—the devises to them being, them, "their heirs and assigns forever."

There could, therefore, of course be no doubt upon the question, but for a clause in the latter part of the will, which is supposed to be repugnant to, or inconsistent with, the devises in fee to the daughters, and to place them upon an equality with the sons, who took estates for life only. These clauses being regarded as repugnant, the rule in the construction of wills is supposed to be applicable, which makes the posterior clause in local position, prevail, when the clauses are utterly irreconcilable, so that they cannot stand together; the subsequent words being considered to denote a subsequent intention.

The clause relied upon, and which, in conformity with the above rule, is supposed to reduce the fee simple estate given to Mrs. Pue, to a life estate, is as follows :

"I will and desire, that in case any of my said sons or daughters should die, leaving a child or children under the age of twenty-one years, that my surviving sons take the property of such child or children into their care and possession, and manage the same for the benefit of such child or children. And, I do hereby give and devise, to my said sons who shall be so surviving, the property herein before devised to such child or children, until they shall respectively arrive at the age of twenty-one years, or marry; in trust, however, to receive the rents," &c., thereof, for the sole use, benefit and interest of such child or children.

It is supposed, and it has been argued, that by force of this clause, which is posterior in local position to the clause which contains the devise in fee to Mrs. Pue, one of the daughters of

the testator, that the devise to her was converted into a life estate, merely, with remainder to her children; and that the surviving sons of the testator are entitled to hold the property in trust for such children, until they respectively attain the age of twenty-one years or marry.

It is quite possible, that if there were no provisions in the will upon which this latter clause could take effect, except on those to be found in the devises to the daughters, the construction contended for would prevail, as it is the duty of the court to give effect to every part of the will, without change, or rejection; provided, an effect can be given to it, not inconsistent with the general intent of the whole will, taken together.

But when, upon an examination of this will it is found, that that there are provisions upon which this latter clause can operate, without at all disturbing the devises to the daughters, it is believed that there is no rule of law which requires its application to those devises. The principle appears to be, that you are not to disturb the prior devise further than is absolutely necessary for the purpose of giving effect to the posterior qualifying disposition. 1 *Jarman on Wills*, 414.

It was said by Lord Redesdale in *Jesson* vs. *Wright*, 2 *Bligh*, 56, "it must not be understood that because a testator uses in one part of his will words having a clear meaning in law, and in another part words inconsistent with the former, that the first words are to be cancelled or overthrown." This is only to be done when the two provisions are totally inconsistent with each other, and where the real intention of the testator cannot be ascertained. *Corecuboven* vs. *Shuler*, 2 *Paige*, 122.

It is quite apparent in this case, that the testator did not intend to give his sons and daughters the same interest in the real estate devised to them respectively, and it would seem equally manifest, that he knew the proper language to be employed in creating a life estate and an estate in fee. In the devises to each one of his numerous sons, he says in terms—I give him the land described, *for and during his natural life*; and to the child or children of such son born in lawful wedlock, and their heirs forever. The same precise language is repeated

in the devise to each son, whilst in the clauses devising to the daughters the terms used are, *to her heirs and assigns forever.*

In view of the marked difference in these devises; the repetition of the same identical language in the devises to each son, and each daughter, it would require a very strong implication to induce the court to believe, that notwithstanding the apparent care of the testator to give different estates to his sons and daughters, as thus manifested, still he intended to place them upon a footing of entire equality. If such was his intention, why did he give himself the trouble to repeat with scrupulous care, the same language in the several devises to his sons, and employ totally different terms, with a meaning essentially variant, when he came to provide for his daughters?

We might speculate upon the motives which actuated the testator to make this difference, and by possibility hit upon the true one; but it is quite as likely we should fall into error, and as we have no concern with his motives, and are only bound to carry his intentions into effect, as well as we can ascertain them, we will not indulge in conjectures upon the subject. That he did not mean to place his sons and daughters upon an equality with regard to the real estate devised to them, seems to me very obvious.

The sons, as we have seen, took estates for life with remainders in fee, to their children; and upon these devises the clause creating the trust will operate, without disturbing the devises to the daughters. The cause in question was intended to operate upon property, which the testator had devised, or thought he had devised to his grandchildren; but he had devised nothing to the grandchildren who might be born of his daughters, and, therefore, as to them, the provision in the latter part of the will, must be ineffectual, though it will operate upon the property devised to the grandchildren born of the sons. The testator may have thought, that although he had given his daughters estates in fee, still their children, if they left any, would take under his will, and not by descent from the mother, and that, therefore, he could place it in the hands of trustees for their use. But it is clear that he had devised nothing to the children

of his daughters, his power over the lands given to his daughters having been exhausted by the devise in fee to them; and the language in the clause creating the trust, so far as these grandchildren are concerned, proceeded upon a mistaken view of his power; for I do not think it can be inferred from this inaccurate reference to the devise to the daughters, that he intended to change the nature of the estates he had previously given them, in clear and technical terms. 1 *Jarman*, 425.

Another consequence would follow the constructions contended for by the counsel for the surviving sons of the testator, which, it appears to me, would be repugnant to his obvious intention; and that would be, that the fee in the lands devised to the daughters, would be undisposed of by the will, and would descend upon his heirs at law. The will was made before the act of 1825, ch. 119, and, therefore, the child or children of the daughters, if they take as purchasers under the will, could take no more than estates for life, which would be placing them in a worse situation than the children of the testator's sons, to whom the remainders of the property devised to their fathers are expressly limited in fee simple. This construction, therefore, would defeat the general intent of the testator, which, though first expressed, shall overrule the particular intent, as is now fully established. 1 *Jarman*, 411, *in the notes*.

My impression, therefore, is, that Harriet, the daughter of the testator, took an estate in fee, in the land which the petition in this case seeks to have sold; and the remaining question is, whether it sufficiently appears, that it will be for the interest and advantage of the parties interested, that it should be sold.

This of course depends upon the proof; and, upon a careful examination of it, I am of opinion, that it does so appear, and, therefore, a decree will be signed for a sale. This decree will provide for a surrender of the lease as proposed; and as the petitioners, Rezin Hammond and others, intervened in this cause, with the leave of the court, the costs of the entire proceedings will be paid out of the proceeds of the sales.

[No appeal was taken from this decree.]