# MARY DE BREE HIGGINS et al.

*vs.*

# SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Executor.

*Wills: construction; technical rules and intention; general and particular intent; testator's right to divide his estate as he pleases; equality among relatives.*

In construing wills, if the court is satisfied that the technical rules, which have been applied to particular expressions, will not carry out, but defeat, the intention of the testator, the rules must yield to such intention, and such construction given as will effectuate that intent.        p. 175

In the construction of wills, if there be apparent a general and a particular intent, the general intent, although first expressed, controls and overrules the particular intent, if there is any conflict between them.        p. 175

A clearly expressed intention in one portion of a will is not to yield to a doubtful construction in any other portion.   p. 175

A testator may make division of his estate among his legatees equally or unequally, as he may see fit.        p. 177

As between individuals in the same degree of relationship, equality would mean equality of sharing, or of participation.
       p. 177

The mere fact that a testator, in dividing the remainder of his estate among certain legatees, adds an "s" to the last name of each, is not an indication that the division was to be made by families.                                                                                      p. 177

*Decided December 4th, 1915.*

Appeal from Circuit Court No. 2 of Baltimore City. (HEUISLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*S. S. Field,* for the appellants.

*R. E. Lee Marshall,* for the appellees.

A brief was filed by *Stuart S. Janney,* solicitor for the Walton defendants, and by *R. E. Lee Marshall,* solicitor for Sosthene Baillio.

A brief was also filed by *George A. Frick* and *E. A. Bilisoly* and *H. Dinwiddie Martin,* on behalf of Ignatius H. Baillio, Cary Andrews Baillio and Oliveira Andrews Baillio, etc.

STOCKBRIDGE, J., delivered the opinion of the Court.

In the construction of any will but little help is to be obtained from adjudicated cases. There are certain general principles and rules of construction which the cases lay down, and these are in entire harmony in all jurisdictions. But the difficulty arises in the application of those principles to

any given will, by reason of slight variations of phraseology in a particular case, or in the nature of the relationship of the testator to his legatees or devisees. The clause which this Court is called upon to construe in the present case is found in the will of Oliveira Andrews, and reads as follows:

"I bequeath to Mrs. Emilie Major, two hundred dollars, and five hundred dollars a year during her life for which I intrust to my sister five thousand dollars in securities, the interest of which will in part pay the annuity, and she may make up the deficiency out of the principal which in this way should last her life, and at her death the remainder may be divided equally among the legatees in Norfolk, Baillios, Waltons, Brookes and Higgins."

It is alleged in the bill, admitted in the answer, and sustained by the proof, that there were living in Norfolk and named in Mr. Andrews' will, seven second cousins, one by the name of Baillio, one by the name of Walton, one by the name of Brooke and four by the name of Higgins. The life estate created by the clause quoted had terminated during the lifetime of the testator, and his sister is also dead. The question now is as to the distribution of the $5,000 among the remaindermen.

The appellees claim that under the language of the first clause, the distribution of this fund should be made by families, and that such a division would result in a division of the $5,000 into four parts, of which the four persons bearing the name of Higgins would be entitled to but a single part.

The clause relied upon to sustain that contention is as follows:

"I appoint the Safe Deposit and Trust Company of South street, Baltimore, as my executors; I give, grant and devise to my sister, Eliza Andrews, my interest in the realty in Norfolk, Virginia, owned by us in common, intrusting her to distribute the rents coming from that property between the families of our cousins, Mrs. Sallie Baillio, Mrs. Mary Walton and Mrs.

Tucker Brooke, deducting two hundred and fifty dollars to be paid during her life to Mrs. Emilie Major, our cousin, during her life, and at her death to be paid to the legatees before mentioned. The rents coming from the house on the north side of Main street to Mrs. Baillio, the rent of the lot on Water street, to Mrs. Mary Walton, and that from the house on the south side of Main street, to Mrs. Tucker Brooke. She may use her discretion in dividing this money, however, between these families to her judgment of their respective needs, and may if she thinks proper give a portion of twenty per cent of it to Miss Mary Debree Higgins, and to her sister, Miss Margaret Higgins. She may dispose by will of this property between these families as she may think best."

The Circuit Court No. 2 of Baltimore City adopted the view of the appellees and entered a decree accordingly. The terms of the decree were erroneous, if for no other reason, because in a practically unbroken line of decisions it is held that the use of the word "family" means parents and children, whether living together or not (*Cosgrove* v. *Cosgrove*, 69 Conn. 416), and therefore if the contention of the appellees is correct, and a distribution is to be made by families, the children of Mrs. Walton and Mrs. Brooke should share *per capita* in the distribution, as well as the mothers.

On the other hand, the position of the appellants is that the first clause above quoted contemplated a division between individuals and not families, and that, therefore, the $5,000 should be divided into sevenths, one-seventh to pass to the proper representatives of Mrs. Baillio, who has died since the death of the testator, one to Mrs. Walton, one to Mrs. Brooke and one to each of the following, Mary de Bree Higgins, Margaret Taylor Higgins, Edward Higgins and John de Bree Higgins.

The rules for the construction of wills are laid down in both the text writers and the adjudicated cases. So far as is necessary to consider them in this case, the law is well ex-

pressed in the case of *Feltman v. Butts, &c.,* 71 Ky. 115, where it is said: "In cases in which technical rules have been applied to particular expressions, if we are satisfied after an examination of the instrument that those technical rules will not carry out but defeat the intention of the author, the technical rules must yield to the intention and such a construction must be given as will effectuate it."

And where there are possible conflicts growing out of the phraseology of a will, the rule was laid down in *Hemsley v. Hollingsworth,* 119 Md. 431, by Judge Boyd, following the cases of *Taylor v. Watson,* 35 Md. 519 and *Pue v. Pue,* 1 Md. Ch. 382, in these words: "The general rule in the construction of wills is that where there is a general and particular intent apparent upon the face, the general intent although first expressed shall control and overrule the particular, if there is a conflict between them." And this is in entire consonance with the decisions in *Abell v. Abell,* 75 Md. 57; *Robinson v. Bonaparte,* 102 Md. 71; and *Gordon v. Smith,* 103 Md. 315.

In *Corrigan v. Kiernan,* 1 Bradf. Sur. Rpts. (N. Y.) 208, it is stated in these terms: "It is a sound principle of construction that a clearly manifested intention in any part of a will ought not to give place to a doubtful provision or ambiguous meaning. An express and positive devise cannot be controlled by subsequent words of uncertain import; the latter prevailing only when they are absolutely irreconcilible with the former."

This doctrine is adopted by Mr. Redfield in his work on "*Wills,*" Vol. 1, 3rd Ed., p. 434, where he gives as the fourth of the general rules applicable to the construction of wills: "A clearly expressed intention in one portion of a will is not to yield to a doubtful construction in any other portion of the instrument."

With these rules in mind, how is the will of Mr. Andrews in the present case to be construed?

In the first clause of his will he devises the rents to be derived from three houses in Norfolk to be distributed "be-

tween the families of our cousins Mrs. Sallie Baillio, Mrs. Mary Walton and Mrs. Tucker Brooke" after certain deductions have been made therefrom. Notwithstanding this phraseology it was apparently his intention that the net rents so given should be paid, not to the families of these three ladies, but to the ladies themselves, and this is then further limited by vesting in his sister a discretionary power to give 20% of the rents to Mary de Bree Higgins and Margaret Higgins. It is from this clause that it is sought by the appellee to derive a general intent of the testator of a division of his property among "families." The difficulties with this contention are two-fold: first, the clause while not strictly speaking a specific legacy of the three pieces of property or the income derived from them, approximates it so closely as to make it scarcely distinguishable from a specific legacy, and no general intent of a testator is to be derived from the provision of a clause of his will which amounts to a specific legacy; secondly, the clause is to a large extent self contradictory, in that, after having given certain rents to the "families" of Mrs. Baillio, Mrs. Walton and Mrs. Brooke, which as has been shown would in each case include their children, provides that the rents coming from particular property were to go, not to the families, but to the ladies named, and then follows a still further limitation, giving to the testator's sister a discretionary power to devote one-fifth for the benefit of other persons, namely, the Misses Higgins. For these reasons this clause must be regarded as ambiguous to such a degree that no general intent whatever on the part of the testator can be deduced from it.

Passing now to the clause of the will first hereinbefore recited, the question is presented which is suggested by the language quoted: "The remainder may be divided *equally* among the legatees in Norfolk, Baillios, Waltons, Brookes and Higgins," and an argument is sought to be based that the family idea for which the appellees contend, is to be derived from the pluralizing of the names "Baillios, Waltons, Brookes and Higgins." The will in question while in most respects

well drawn is not at all points marked by technical precise-
ness, and suggests that it may have been written by the testa-
tor. The inconsistencies pointed out in the first clause of
the will illustrate this. Moreover, this bequest was pri-
marily to "the legatees in Norfolk," it would have been com-
plete without the addition of the names; but the children of
Mrs. Baillio, Mrs. Walton and Mrs. Brooke are nowhere
mentioned in the will, except in so far as they are to be in-
cluded, if at all, in the first paragraph. On the other hand,
all four of the testator's second cousins bearing the name of
Higgins are legatees by name, and to say that it was the
intent of the testator by the addition of the letter "s" to the
names Baillio, Walton and Brooke to make a division by
families, would be a strained and artificial distinction, not
in consonance with what is apparently the purpose of this
clause, and therefore, not to be sanctioned under the rule
laid down in *Abell* v. *Abell, supra.*

It is of course entirely competent for a testator to make
division of his estate among his legatees equally or unequally
as he may see fit. What constitutes equality may not be so
easy of definition, but as between individuals standing in
the same degree of relationship, it would seem that equality
would mean equality of sharing or participation. That
would be accomplished in the present case by the division
of the $5,000 into sevenths, of which one-seventh each would
be the share of those representing Mrs. Baillio, of Mrs. Wal-
ton, of Mrs. Brooke, and each of the four named Higgins,
and would gratify the expressed intent of the testator that
the $5,000 should be divided equally.

In the brief filed on behalf of Ignatius H., Cary A. and
Oliveira Baillio suggestion is made that Laurence Brooke is
one of those who come within the designation contained in
the clause under consideration. The difficulty with this is,
that no such claim is set up in the answer of Laurence
Brooke or in the brief of the counsel who apparently repre-
sented him. He is not mentioned in the will as residing in
Norfolk, as are the other persons, and apparently does not

come within the description of legatees under the clause which has been considered.

By agreement of the parties it was stipulated that the cost of this proceeding, together with certain counsel fees, should be paid out of the $5,000, and the decree of the Circuit Court was in accordance therewith, but for the reasons already indicated the decree of the Circuit Court No. 2 of Baltimore City must be reversed, and the case remanded, with direction to said Court to so amend the third paragraph of the said decree, which provides for the division of the fund in question, that the same shall be divided into seven equal parts, of which seven parts, one shall be distributable and payable to Mary C. Walton, one to Lucy B. Brooke, one to Mary de Bree Higgins, one to Margaret Taylor Higgins, one to Edward Higgins, one to John de Bree Higgins, and that the remaining seventh part shall be then distributed, one-third thereof to Sosthene Baillio, surviving husband of Sallie Baillio, and one-sixth of said one-seventh equal portion, to each of the following: Ignatius Higgins Baillio, Cary Andrews Baillio, Gervais Baillio and Oliveira Andrews Baillio.

> *Decree reversed and cause remanded, costs to be paid out of the fund.*