Harold A Craig, Executor under the Will of Charles Hassan, Deceased, Appellant, v. Hegeler Local Union No. 209, Mine, Mill and Smelter Workers et al., Appellees.

Gen. No. 9,597.

Opinion filed May 27, 1948. Rehearing denied July 14, 1948. Released for publication July 14, 1948.

JOHN R. DEAN, of Danville, for appellant.

HENRY S. WISE and WAYNE COOK, both of Danville, for appellees.

MR. JUSTICE DADY delivered the opinion of the court.

This is an action at law, begun April 30, 1946, by Harold A. Craig, as executor of the will of Charles Hassan, deceased, against Hegeler Local Union No. 209, Mine, Mill and Smelter Workers, defendant, for death benefits of $800 alleged to be due under the terms of the constitution and by-laws of the union. The jury found and judgment was entered for defendant. Plaintiff appeals.

The complaint alleged and the undisputed proofs show that: Charles Hassan, hereafter referred to as "decedent," died at Danville, Illinois, on November 6, 1944, leaving a will which was duly admitted to probate; plaintiff is the duly appointed, qualified and acting executor of such will; defendant was and is a labor union and an unincorporated association of employees of the Hegeler Zinc Company, organized for the mutual benefit of its members; its by-laws and constitu-

tion provide that in case any member in good standing dies the union will pay his family a death benefit of $800; decedent was at the time of his death a member of the defendant in good standing, and the then by-laws made no provision that death benefits would lapse in the event there was no family of such a deceased member at the time of his death.

The complaint alleged and the answer denied that the decedent at the time of his death had no family to whom death benefits should be paid. The complaint alleged that in view of such facts defendant was obligated to pay such $800 to plaintiff, and had failed to do so after demand therefor. The answer denied that defendant was obligated to make such payment.

The by-laws provided that "Any member . . . who dies . . . while in good standing, his family shall be entitled to a death assessment of $800 from the membership of this local. . . ."

The will of decedent, dated November 2, 1944, gave, devised and bequeathed his entire estate to his nephew, Joseph Allie, "except a $50.00 war bond which I give to Bonnie Martin." Bonnie Martin was the daughter of the Mrs. Martin hereafter referred to.

Aside from the claim for which plaintiff is suing, the assets of the estate of decedent were not sufficient to pay the expenses of his last illness and his funeral and burial expenses. The plaintiff, who by profession is an attorney, testified that the proceeds of the claim sought to be recovered on in this proceeding would go to pay the obligations of the estate, funeral bill, "expenses of last illness, etc."

Decedent was a native of Syria. When aged 16 years he married and his wife was then aged 14 years. They had a son named Moses Hassan, and possibly one or two other children. Decedent left his family and came to the United States about the year 1906, when aged about 19 years. At all times thereafter he lived in the United States and never returned to Syria. None of his family ever came to the United States.

The last two years of his life decedent roomed at the home of Mrs. Martin. Mrs. Martin's daughter, Bonnie, lived with her mother.

Mrs. Martin testified that decedent could neither read nor write English, and she and her daughter read his mail to him and wrote letters for him, that he received no letters from any relative other than his nephew, Joseph Allie, and they wrote no letters for him addressed to Syria; that he told her he did not have any family, and never loved his wife and could not live with her, and that when he left for the hospital a few days before his death she said to him, ''Charlie, have you any family left?'' and he said, ''No, I haven't any one but Joe. I want you to notify Joe and I want to make a will.''

Bonnie Martin testified that decedent told her he never heard from his wife or boy since he left Syria, that he never wanted to return to his home while his wife was alive, and that several months before he died he told her his wife and child were dead.

Joseph Allie, decedent's nephew, testified that he had lived in this country since 1914 and had worked as a laborer in Michigan for the last 27 years, that one day when decedent was in the hospital during his last illness decedent told him that ''Long as that woman live, I am not going to go back home, she told me to get out and I did, as long as that woman alive, I won't go back home.'' He further testified that decedent ''got one boy, and I tried to get him, I can't get no information.''

William Hassan testified that he came to the United States in 1904, that all of his life he had known but was not related to decedent, that in Syria he and decedent lived close by each other, that decedent never mentioned to him that he had a wife or son but had told him and he knew decedent had a family, but the witness did not know whether they were still alive, that ''I know his boy died,'' that just before decedent died decedent told him that about two years before

that he had sent $200 or $100 from a Danville bank to his family, but had never heard anything about it.

Francis Parrish, a trust officer of a Danville bank, testified he knew decedent for about the last ten years and decedent was a depositor in the bank, that about February 11, 1943, he had a talk with decedent in which decedent inquired if he could send money to his wife and sons in Syria, and he told decedent he would inquire about it for him. Parrish then identified a letter dated February 11, 1943, which we wrote at request of decedent to a New York bank, and the reply of such bank, concerning the possibility of sending money to Syria, which letters were admitted in evidence. Evidently no money was sent at that time. Parrish then testified that in January 1944, after again talking to decedent, he wrote a letter to an express company at New York. This letter was admitted in evidence, was dated January 6, 1944, and stated, ''Enclosed find our check . . . for which kindly remit by cable $100 to Moses Hassan . . . Syria. This remittance is made on the order of Charles Hassan.'' Parrish then identified a letter from the express company, admitted in evidence, dated January 20, 1944, which stated the remittance had been cabled to Moses Hassan in Syria. He then testified such $100 never came back to the bank.

Edward Gielow testified he was chairman of the death committee of the defendant, that he made several attempts to contact the family of decedent, that he knew the decedent for thirty years, that the summer before decedent died he told Gielow he had a wife and son in the old country.

Horace L. Stark testified he was an officer and member of the district union, and knew decedent for a number of years, that several times decedent said, ''Stark, I have a son as big as you are,'' that decedent told him he had asked his wife and son to come to this

country but that they didn't want to come to this country.

Joseph Klaman testified he knew the decedent since 1927, and the decedent always stated to him that he had a wife and son and his intention was to bring his wife and son to this country.

■■ Plaintiff contends that the trial court erred in denying plaintiff's motion for a judgment notwithstanding the verdict "because the verdict was manifestly contrary to the weight of the evidence." If the verdict was manifestly contrary to the weight of the evidence, we do not understand that this would justify the granting of such a motion. However, we do not consider that the verdict was against the manifest weight of the evidence.

■■ Plaintiff contends that the trial court erred in denying plaintiff's motion for a new trial because of the giving and refusing of instructions and the admission of certain exhibits. It is our opinion that the defendants' instructions complained of correctly advised the jury as to the meaning of the word "family" as used in such by-laws, and that the plaintiff's refused instructions did not correctly state the law applicable. Exhibits 1 to 7, inclusive, and exhibit 17, were the only exhibits objected to. They were copies of letters identified by the witness Parrish as having been written by him at the request of decedent, and the original letters which he received in reply thereto. It is our opinion there was no error in the admission of such exhibits.

In his printed argument filed in this court the plaintiff says "there is no evidence tending to show" the death of the wife and children of the defendant. In such printed argument the plaintiff also says, "There was only one point in dispute. That was whether or not the deceased had a family. . . . The disagreement comes as to the definition of a fam-

ily or what constitutes a family. This issue has resolved itself into a question of law which this court has the right to determine."

Plaintiff tried his case in the trial court and presents it in this court on the theory that even though the wife and a child or children of the decedent were living at the time of his death, nevertheless under the particular facts the decedent at his death did not leave any family within the meaning of such by-laws.

In passing on the meaning of the word "family" as used in such by-laws, it is our opinion that such word should receive a liberal and not a strict construction, and it is our opinion and we hold that, under the particular facts of this case, if the decedent had a wife or child living at the time of his death, such wife or child was at that time one of and a member of his family within the meaning of the word "family" as used in such by-laws. (See *Danielson v. Wilson*, 73 Ill. App. 287; *Berry v. Hanks*, 28 Ill. App. 51, 55; *Norwegian Old People's Home Society v. Wilson*, 176 Ill. 94, 99; *In re McFarland*, 49 F. (2d) 342; *Higgins v. Safe Deposit & Trust Co.*, 127 Md. 171, 96 Atl. 322, and 35 C. J. S. p. 740.)

It is our opinion that the trial court properly denied the motion of plaintiff for a judgment notwithstanding the verdict, and properly denied the motion of the plaintiff for a new trial, and it is our opinion that no reversible error has been called to our attention.

Therefore the judgment of the trial court is affirmed.

*Affirmed.*